# NATHANIEL K. BEASLEY *et al.*

## *v.*

## WILLIAM H. WEBSTER.

1. MECHANIC'S LIEN—*where time of payment is not in one year from completion.* To entitle a party to a lien under the statute, the time of completing the contract must not be extended for a longer period than three years from the time of entering into the same, nor the time of payment beyond the period of one year from the time stipulated for the completion thereof.

2. SAME—*contract construed as to time of payment.* Where a contract for the erection of a building provided that the owner should pay $560 for the same, as follows: $100 in advance, and $10 per month until the whole of the balance was paid, with 10 per cent interest on all unpaid, the interest and $10 payments to commence when the job was completed, and insure the house for the benefit of the builder, and assign his title to the lot to the builder, after the expiration of one year, for the security of the balance unpaid: *Held*, as against a subsequent purchaser, on bill to enforce a lien, that the last payment was not to become due within one year from the completion of the contract, and consequently no lien attached; and that upon the failure of the owner to assign his title to the

lot at the expiration of the year, the whole of the debt did not become immediately due, such assignment not being a condition to the extension of the time of payment.

3. CONTRACT *for the benefit of a third party—party plaintiff.* Where a party, holding a title bond to a lot upon which a small sum remained unpaid, being indebted to B, transferred the same in payment to B, who agreed with the party to complete the payment thereon, and to pay to A the amount due him from such party for erecting a building on the premises, A not being a party to such contract: *Held,* that the promise having been made for the benefit of A, he could maintain an action at law thereon, in his own name.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. KIDDER & NORCROSS, for the appellants.

Messrs. MADDEN & LUCY, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This controversy has its origin, in great part, on the following contract:

"This contract, by and between Wm. H. Webster, of the town and city of Monmouth, county of Warren, State of Illinois, and Charles Wilcox, of the above named place, made this fourteenth day of March, A. D. 1867, to wit: Said Webster, of the first part, agrees to build and complete a dwelling house, as hereafter described and placed on back of said contract; house to be twenty-six by twenty feet, one story of nine feet high; first party to furnish all the material and complete said house (except blinds), and to put on one coat of paint; to be divided into one hall and parlor, and setting-room, one bed-room and close-room, with six windows, twelve by eight, eight by fourteen glass, two by eight doors, placed as per plan on back of contract; said house to be completed by the first of May next. Said Wilcox, of the second part, is to furnish lot, also to furnish posts in addition. First

party to set said house on blocks, so second party can under-pin with brick or stone, at any time after said house is built. Second party is to pay five hundred and sixty dollars, as follows: To pay one hundred dollars in advance, and then pay ten dollars a month until the whole of the balance is paid, together with ten per cent interest on all unpaid, interest and ten dollar payments to commence when job is completed. Second party is to get the house insured, in some good company, against fire and lightning, for first party's benefit, to the extent of first party's claim; also, to assign his title to said lot to first party, at the expiration of one year, for the security of the balance unpaid."

At the time this contract was made, Wilcox held, from Quimby and Lawrence, a bond for a deed to lot four (4), in block eleven (11), in their addition to the city Monmouth, on which lot Webster erected the house, as set forth in the above contract, and had completed the same on or about the first day of May, 1867.

On the fourth day of June, 1868, there remained due on the contract the sum of four hundred and fifty dollars.

It further appears that on that day Wilcox was indebted to appellants (Beasley brothers) in the sum of seven hundred dollars, and they being desirous that the same should be secured by Wilcox—he still holding the title bond of Quimby and Lawrence to the lot—he executed to them a mortgage on the lot, in the usual form, with the usual covenants, with this clause added: "Except as against claim of W. H. Webster for a mechanic's lien for four hundred and fifty dollars." This mortgage appellants declined to accept, whereupon Wilcox then assigned to them his title bond, on which there was due Quimby and Lawrence about seventy dollars, and, as is insisted by appellee, upon the express promise by them to Wilcox that they would pay to the obligees in the bond whatever was due on the lot, and also pay the claim of appellee, Webster.

Appellants paid the balance due on the bond, and obtained from Quimby and Lawrence a deed for the lot, and took possession thereof, refusing to pay the claim of appellee, but offering to sell the property, regardless of such claim.

On this state of facts, Webster filed in the Warren circuit court, on the twenty-third of April, 1869, this bill for an injunction, and an account, making the Beasleys and Wilcox defendants.

A writ of injunction was issued, restraining the Beasleys from selling the lot.

The Beasleys answered the bill, denying therein any notice of the alleged equity of Webster in the premises, and also denying any promise made by them, to Wilcox or Webster, to pay Webster's claim on the lot and premises.

To this answer there was a replication, and at the May term, 1872, the cause came on for final hearing on the bill, answer, replication and proofs, and a decree was entered that the Beasleys be enjoined from selling the premises until they shall have paid to Webster the amount of his claim—four hundred and fifty dollars, with interest thereon from the fourth day of June, 1868, together with the costs of suit; and that in default thereof, the master in chancery should sell the premises, and if they shall not sell for a sum sufficient to pay appellee's claim, with interest and costs, that an execution issue for the balance against the Beasleys.

To reverse this decree, the Beasleys appeal, and assign various errors, all of which will be disposed of as we proceed.

The first inquiry will naturally be, is appellee, by the terms of the contract between him and Wilcox, entitled to the decree rendered?

It is insisted by appellants' counsel that, inasmuch as the contract itself extends the time of payment for a longer period than one year from the completion of the building by appellee, for that reason alone he could have no lien for his

462        BEASLEY *et al. v.* WEBSTER.        [Sept. T.,

Opinion of the Court.

labor and materials. On the other hand, it is insisted that the time for the last payment was not so extended.

In support of appellants' ground, reference is made to section 2, chapter 65, Mechanic's Lien Law, which declares "the lien shall extend to all work done and materials furnished under the provisions of the contract, whether the kind or quantity of the work, or amount to be paid, be specified or not: *provided*, that the time of completing the contract shall not be extended for a longer period than three years, nor the time of payment beyond the period of one year from the time stipulated for the completion thereof." R. S. 345.

This court, in construing this section in *Cook et al.* v. *Vreeland,* 21 Ill. 431, said the obvious intention of the legislature was to dispense with provision in the contract as to the kind of work to be performed, and as to the specific amount to be paid, but to require the contract to fix and limit a time when the work should be completed and the money should be paid; and if, by the terms of the contract, the work was to be performed within three years from the entering into the contract, and the money was to be paid, by the express or implied agreement under which it was to be performed, within one year after its completion, then, and not till then, could the creditor, as between himself and the other party, avail himself of the benefit of the time. It was further said, this section evidently refers to the making and entering into the contract, when it prohibits the extension of the time for completing the work to three years, and the time of payment to one year after its completion.

In support of appellee's position, he argues that the last payment was due and payable, by the terms of the contract, at the time Wilcox agreed to assign his title bond, which was at the expiration of one year, for the security of the balance unpaid. He contends the contract to extend the time was executory, and until the title should be assigned according to the contract, all the obligations of the principal remain in full force.

In support of his view, he cites *Gardner* v. *Hall et al.* 29 Ill. 278, as analogous.

We have examined that case carefully, but are unable to perceive the analogy. That case was a building contract, entered into between Gardner and Hall on the ninth of April, 1860, to be completed by the twentieth of July, of the same year, the first payment to be made two months after the time fixed for the completion of the contract, to wit: on the twentieth of September, 1860, and twenty-five dollars per month until the first day of January, 1861, when the whole sum should be due and payable to Gardner for his labor and materials furnished, at the rate specified, with ten per cent interest from the twentieth of July, 1860. The contract further provided that if Hall should give a mortgage, which should be a first lien upon the premises, on the first day of January, 1861, to Gardner, conditioned to pay Gardner at the rate of fifty dollars per month, with ten per cent interest from the first day of January, 1861—the first payment to be made at the time of giving the mortgage—until the whole sum remaining due to Gardner on the first day of January, under the contract, should be paid, then Gardner agreed to take the mortgage conditioned as above, with notes for the sums to be due at the times respectively stated, and extend the time of payment according thereto.

To this contract was appended an admission, by Hall, that on the eighteenth day of August, 1861, upon an accounting between him and Gardner, there was due Gardner, for work done by him according to the contract, the sum of three thousand four hundred and eighteen $\frac{20}{100}$ dollars.

Hall did not execute the mortgage on the first day of January, 1861, nor did he offer so to do.

It is apparent, this contract provided that the whole sum should be due and payable to Gardner on the first day of January, 1861, something over five months from the time of the completion of the contract by Gardner. It is true, the contract further provided that if Hall should, on the first day of

January, execute to Gardner a mortgage on the premises, and pay at the rate of fifty dollars per month, then Gardner was to accept the same and extend the time of payment accordingly. Hall did not execute the mortgage, and hence this court held the money having become due on the first day of January, 1861, remained due, the time of payment being to be extended only upon the compliance by Hall with certain conditions. The court say an agreement was made to give a mortgage, which would have destroyed the lien, but no mortgage was given, and hence the lien remained.

Are the facts substantially the same in the case before us? Let us look at the contract; its language is, " second party is to pay five hundred and sixty dollars, as follows: to pay one hundred dollars in advance, and then pay ten dollars a month until the whole of balance is paid, together with ten per cent interest on all unpaid, interest and ten dollar payments to commence when job is completed. Second party is to get the house insured, in some good insurance company, against fire and lightning, for first party's benefit, to the extent of first party's claim; also, to assign his title to said lot to first party, at the expiration of one year, for the security of the balance unpaid."

Can we, by any reasonable construction of this contract, hold that the last payment was to become due within one year from the completion of the building, and that the payments were only to be extended upon Wilcox insuring the premises and assigning his title bond to appellee? Must we not infer from the contract that the last payment was to become due four or five years after the completion thereof, for a payment of ten dollars per month would require that time to discharge a debt of four hundred and fifty dollars, with accruing interest upon it?

We can not make a contract for the parties, but are only required to construe the contract they have made for themselves; and in doing so, we have reached the conclusion that the last payment was, by the very terms of the contract,

extended beyond the time of one year from the completion thereof.

We are not of opinion from the evidence that appellee, from the inception of the contract to its completion, relied for payment upon a lien. He evidently relied upon the ability and integrity of Wilcox to make the stipulated payments, and that at the end of the year from the time of making the contract, namely: on the fourteenth of March, 1868, Wilcox was to assign his title bond as additional security. Appellee could not enforce his lien before this date, because on that day he had agreed to take additional security. All these go to show he did not rely upon a mechanic's lien. The record does not show that appellee at any time insisted upon the assignment of the title bond on the fourteenth of March, 1868; nor does the contract provide that, in default of giving this additional security, all the deferred payments should become due. We can draw no other inference from all this than that the last payment was extended beyond one year from the completion of the contract, and no lien was acquired. R. S. ch. 65, *supra*.

As to appellants' position, that there was no agreement on their part to pay appellee's claim, we are satisfied from the evidence that they had notice of this claim, and agreed to pay it. They made no contract with appellee to pay it, nor did they ever say to him they would pay it; but in their negotiations with Wilcox, they promised him, on condition of his assigning the title bond to them, they would pay appellee what was due him on the building contract. It was a promise to Wilcox, for the benefit of appellee alone, on which he can maintain his action at law against appellants, on the authority of *Eddy* v. *Roberts,* 17 Ill. 505; *Brown* v. *Strait,* 19 ib. 88; *Bristow et al.* v. *Lane et al.* 21 ib. 194; *Rabberman* v. *Wiskamp,* 54 ib. 179.

The remedy of appellee is complete at law, by action against appellants, on their promise.

For the reasons given, the decree of the circuit court is reversed.                               *Decree reversed.*